IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

SOUTHERN GROUTS & MORTARS, INC.

    Plaintiff,
vs.

LATICRETE INTERNATIONAL, INC.

    Defendant.

_____/

## COMPLAINT FOR INJUNCTION AND OTHER RELIEF

Plaintiff, Southern Grouts & Mortars, ("SGM"), by and through undersigned counsel, hereby sues Defendant, Laticrete International Inc. ("LATICRETE") and states:

### INTRODUCTION

1. This action arises from the blatant and willful act of Defendant, Laticrete International Inc., to unlawfully infringe upon the patent of Plaintiff, Southern Grouts and Mortar Inc., and to unlawfully commercially exploit products derived therefrom. To remedy Defendant's patent infringement and other unlawful acts, Plaintiff brings this action for a preliminary injunction, a permanent injunction, statutory damages, compensatory damages, disgorgement of Defendant's profits, an accounting, freezing and seizure of Defendant's accounts, costs and attorneys' fees, all based upon Defendant's multiple violations of the U.S. patent laws pursuant to 35 U.S.C. §§ 271, 281-288; unfair competition in violation of federal common law; and a violation of Florida's Deceptive Uniform Trade Practices Act pursuant to F.S.A. § 501.204 *et seq.*



## **PARTIES AND JURISDICTION**

2. This Court has jurisdiction over this matter and venue is conferred by 27 U.S.C. §§ 1338, 1391 and 1400(b); and 28 U.S.C. § 1331; and 28 U.S.C. § 1367.

3. Plaintiff, SGM, is a Florida corporation, authorized to and doing business in Florida.

4. Defendant, LATICRETE, is a Connecticut corporation. Defendant is authorized to and doing business in Florida and by means of its significant business dealings and revenues in Florida, which arise directly from the sale of its infringing product, as such, Defendant, LATICRETE, is subject to Florida's long-arm statute and the jurisdiction of this Court.

5. The United States Patent and Trademark Office issued the following patent, which by assignment, legally qualifies SGM as the rightful owner in and to the patent:

   a. Patent Number: US 6,596, 074 B2 (the "Patent")

   b. File date: July 20, 2001/Appl number 09/909,071

   c. Issue date: July 22, 2003

   d. Patent term: Twenty (20) years

   e. Type: Cementitious Product with Phosphorescence

6. All conditions precedent to the filing of this action have been performed, waived or excused.

7. Plaintiff has retained the law firm of ROTHSTEIN ROSENFELDT ADLER and is obligated to pay it a reasonable fee for its services.

## FACTUAL ALLEGATIONS

8.  Plaintiff, SGM, is a Florida corporation with its principal place of business located at 1502 S.W. 2nd Place, Pompano Beach, Florida 33069.

9.  Plaintiff, SGM, is a worldwide manufacturer and distributor for swimming pool, spa & deck finishes and installation systems for ceramic tile dimension stone. Plaintiff, SGM, is also a comprehensive source for engineers, contractors and applicators.

10. At all times material hereto, Plaintiff, SGM, has conducted and continues to conduct business worldwide, including offices located in Florida, Texas and California.

11. Plaintiff, SGM, owns all right, title and interest in and to the Patent. As such, Plaintiff, SGM, has the exclusive right for the Patent term 20 years from the date on which the application was filed in the United States, to commercially exploit the Patent.

12. Plaintiff's, SGM, patent was filed for publication on July 20, 2001.

13. Plaintiff's, SGM, patent was issued by the United States Patent and Trademark Office ("USPTO") on July 22, 2003.

14. The Patent pertains to the use of phosphorescent pigments (a/k/a "glow in the dark" properties) in cement-like materials and allied applications, specifically in use for tile, mortars and grouts, pool plasters, wall plasters, cement-like roofing materials, coatings and patches and self-leveling compounds.

15. One of the key elements of the Patent, and for which patent, claims were specifically made for and accepted by the USPTO in the Patent, was the phosphorescent ("glow in the dark") properties of the cementitious product. Indeed, the Patent's abstract

and title of the patent itself, delineates this key invention as critical to the uniqueness of the Patent. See the Patent [title, abstract, and Examples 6 and 7]; attached hereto as Exhibit "A."

16.     Given SGM's high reputation and its subject innovation in the cementitious-product industry, SGM has become a leading manufacturer in the market of cementitious-phosphorescent products.

17.     Defendant, LATICRETE, knowingly and intentionally has infringed on SGM's Patent by selling within the judicial district of this Court and elsewhere a product known as "Spectra Lock" that infringes upon the Patent of SGM. On the product package itself and, in the nation-wide sales and marketing materials, Defendant, LATICRETE, prominently features and describes the phosphorescent qualities of "Spectra Lock".

18.     Moreover, in an effort to claim uniqueness in the marketplace and otherwise hold out to the public that "Spectra Lock's phosphorescent feature was created by Defendant, LATICRETE, the latter has caused a "patent pending" designation to be attached to all "Spectra Lock" packaging.

19.     Despite knowing of Plaintiff's, SGM, patent encompassing the use of phosphorescent pigments (a/k/a "glow in the dark" properties) in cement-like materials and allied applications, specifically in use for tile, mortars and grouts, pool plasters, wall plasters, cement-like roofing materials, coatings and patches and self-leveling compounds, Defendant, LATICRETE, filed for a patent on July 15, 2004.

20.     Defendant's, LATICRETE, patent was issued April 19, 2005.

21.     Plaintiff, SGM, through its counsel, on January 28, 2004, notified Defendant, LATICRETE, that its "Spectra Lock" product, the sale of which became

4

known to SGM in or about August, 2003, blatantly infringed upon SGM's patent and demanded that Defendant, LATICRETE, immediately cease and desist its unlawful conduct.

22. Despite Plaintiff's, SGM, notice to Defendant, LATICRETE, LATICRETE continues to manufacture, distribute and sell its infringing product in interstate and international commerce.

## COUNT I

## ACTION FOR PATENT INFRINGEMENT

23. Plaintiff, SGM realleges and reavers the allegations set forth in paragraphs 1 through 22 as if fully set forth herein.

24. This is an action for patent infringement pursuant to 35 U.S.C. §§ 271, *et. Seq*.

25. Defendant, LATICRETE, has and will continue to actively market, advertise, use and sell its product; one that clearly infringes on Plaintiff's, SGM, Patent.

26. Despite notice and warning not to do so, Defendant, LATICRETE, has and will continue to utilize the infringing product for its own financial and personal gain. By its conduct and express words, Defendant, LATICRETE, has identified itself as the rightful owner and user of this material, when in fact the product being sold by Defendant, LATICRETE, is an infringing product.

27. Defendant's, LATICRETE, actions were taken with the specific intent of utilizing an infringing product for its own benefit, to the detriment of Plaintiff, SGM.

28. Defendant's, LATICRETE, actions, as set forth above, constitute impermissible patent infringement.

29. As a direct and proximate result of Defendant's, LATICRETE, wrongful conduct, Plaintiff, SGM, has been damaged, and is likely to suffer further damage, including, but not limited to, customer confusion, sales diverted from Plaintiff, SGM, to Defendant, LATICRETE, and injury to Plaintiff's, SGM, reputation and goodwill.

30. Defendant, LATICRETE, will continue its acts of infringement unless enjoined by this Court.

31. Notwithstanding notice, Defendant, LATICRETE, has willfully infringed and continues to infringe and such infringement is subject to increased damages as provided for by 35 U.S.C. § 284.

32. Defendant, LATICRETE, infringement on Plaintiff's, SGM, Patent constitutes an exceptional case and as such is subject to attorney's fees as provided for by 35 U.S.C. § 285.

**WHEREFORE**, Plaintiff, SGM, respectfully requests:

a. A preliminary and permanent injunction enjoining Defendant, LATICRETE, from engaging in patent infringement as detailed herein;

b. An Order requiring Defendant, LATICRETE, to account for and pay Plaintiff, SGM, damages, and enhanced damages up to three times the amount found or assessed against Defendant, LATICRETE, pursuant to 35 U.S.C. § 284, for patent infringement, including interest on said damages;

c. An award of Defendant's, LATICRETE, profits attributable to their patent infringement, or such other sum as the court deems just;

    d.    An Order granting Plaintiff's, SGM, costs and reasonable attorney's fees and costs be assessed against Defendant, LATICRETE, pursuant to 35 U.S.C. § 285; and

    e.    An award of any other and further relief as this court deems just and proper.

## COUNT II

### ACTION FOR VIOLATION OF THE FEDERAL COMMON LAW OF UNFAIR COMPETITION

33.    Plaintiff, SGM, realleges and reavers paragraphs 1 through 22, as if fully set forth herein.

34.    This is an action for the federal common of law unfair competition against Defendant, LATICRETE.

35.    Defendant's, LATICRETE, actions, as set forth herein, constitute unfair competition for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.

36.    Defendant's, LATICRETE, actions, as set forth herein, were taken with the specific intent of causing customer confusion and diverting Plaintiff's, SGM, business to Defendant's, LATICRETE.

37.    Defendant, LATICRETE, has been actively marketing, advertising, and selling Plaintiff's registered patent for its own pecuniary gain and in words has identified, or attempted to identify itself, as the "real" or supposed holder of the unique material found in the patent, when in fact, the product sold was an infringing product.

38.    Defendant's, LATICRETE, actions, as set forth above, constitute unfair competition under the Patent laws and federal common law.

7

39. Defendant's, LATICRETE, actions, as set forth above, show a likelihood of confusion, mistake or deception to customers, as to the infringing product.

40. As a direct and proximate result of Defendant's, LATICRETE, conduct, Plaintiff, SGM, has been damaged, and is likely to suffer further damage, including, but not limited to, customer confusion, sales diverted from Plaintiff, SGM, to Defendant, LATICRETE, and injury to Plaintiff's, SGM, reputation and goodwill.

41. As a direct and proximate result of Defendant's, LATICRETE, unlawful and willful actions as set forth herein, Plaintiff, SGM, has suffered damages and will continue to suffer damages in the future.

42. Pursuant to the federal common law of unfair competition, this court may issue temporary and final injunctive relief to prevent and restrain unfair competition. A permanent injunction against Defendant, LATICRETE, is warranted because Defendant's, LATICRETE, actions are infringing on Plaintiff's, SGM, right under the Patent laws and constitutes unfair competition prohibited by federal law.

**WHEREFORE**, Plaintiff, SGM, respectfully requests:

a. A preliminary and permanent injunction enjoining Defendant, LATICRETE, from engaging in unfair competition as detailed herein;

b. An Order requiring Defendant, LATICRETE, to account for and pay SGM damages, for unfair competition, including prejudgment and post-judgment interest on said damages;

c. An award of Defendant's, LATICRETE, profits attributable to their unjust enrichment, or such other sum as the court deems just;

    d.    An Order granting Plaintiff's, SGM, costs and reasonable attorney's fees and costs be assessed against Defendant, LATICRETE; and

    e.    An award of any other and further relief as this court deems just and proper.

## COUNT III

### VIOLATION OF FLORIDA DECEPTIVE
### UNIFORM TRADE PRACTICES ACT

43. Plaintiff, SGM, realleges and reavers paragraphs 1 through 22, as if fully set forth herein.

44. This is an action under Section 501.204, *et seq.*, Fla.Stat., Florida Deceptive Uniform Trade Practices Act.

45. Defendant, LATICRETE, has been actively marketing, advertising, and selling goods, in Florida, that infringe on Plaintiff's, LATICRETE, registered patent.

46. Defendant, LATICRETE, has utilized the registered licensed patent and in doing so, Defendant, LATICRETE, has identified itself as the rightful owner and user of this material when in fact the product being sold by Defendant, LATICRETE, is an infringing product.

47. Defendant's, LATICRETE, aforementioned action have caused and will continue to cause consumer confusion due to its deceptive, fraudulent and infringing nature.

48. Defendant's, LATICRETE, actions, as set forth above, constitute false designation of origin, false or misleading description of fact, false or misleading representation of fact, or improper patent infringement and has caused or are likely to cause confusion.

9

49. Defendant's, LATICRETE, actions, as set forth above, were taken with the specific intent of causing customer confusion, diverting Plaintiff's, SGM, business to Defendant and/or infringing on a Legally protected patent.

50. Defendant's, LATICRETE, actions, as set forth above, are willfully performed with knowledge of the unfair and deceptive nature of such actions, and are likely to damage Plaintiff's, SGM, business, reputation, and good will.

51. Defendant's, LATICRETE, actions, as set forth above, show a likelihood of confusion, mistake or deception to customers, as to the association of the infringing product.

52. As a proximate result of Defendant's wrongful conduct, Plaintiff has been damaged, and is likely to suffer further damage in Florida, including, but not limited to, customer confusion, sales diverted from Plaintiff to Defendant, and injury to Plaintiff's reputation and goodwill.

**WHEREFORE**, Plaintiff, SGM, respectfully requests:

a. A preliminary and permanent injunction enjoining Defendant, LATICRETE, from engaging in its deceptive trade practices as detailed in herein;

b. An Order requiring Defendant, LATICRETE, to account for and pay plaintiff damages for its deceptive trade practices, including interest on said damages;

c. An award of Defendant's, LATICRETE, profits attributable to its deceptive trade practices, or such other sum as the court deems just;

d. An Order granting Plaintiff's, SGM, costs and reasonable attorney's fees,

pursuant to F.S.A. § 501.2105, be assessed against Defendant, LATICRETE; and

e.  An award of any other and further relief as this court deems just and proper.

## COUNT IV

## ACCOUNTING

53. Plaintiff, SGM, realleges and reavers paragraphs 1 through 22 above as if fully set forth herein.

54. Plaintiff, SGM, seeks an accounting regarding the amount of profits Defendant, LATICRETE, has amassed based on its patent infringement and fraudulent conduct.

55. Plaintiff, SGM, also seeks an account of income from, expenditure of, and any expenses related to Defendant's, LATICRETE, violations and fraudulent conduct, said information regarding such income being in the exclusive control of Defendant, LATICRETE.

56. Plaintiff, SGM, has provided notice of violations to Defendant, LATICRETE, but Defendant has refused to acknowledge Plaintiff.

57. Plaintiff, SGM, has and continues to be damaged by Defendant's, LATICRETE, refusal to acknowledge its infringing conduct and thus to provide a response and fears that significant profits may have been squandered or hidden by Defendant, LATICRETE.

58. There remains no adequate remedy at law.

59. Defendant's, LATICRETE, accounts must be frozen and seized to ensure

that Defendant, LATICRETE, does not have further opportunity to squander and hide further assets that rightfully belong to Plaintiff, SGM.

60. Plaintiff, SGM, is entitled to an accounting of the proceeds from the unwarranted, illegal, fraudulent and infringing use of its registered licensed patent which amounts Defendant has solely controlled.

**WHEREFORE**, Plaintiff, SGM, respectfully requests this Court:

a. Order Defendant, LATICRETE, to account for all monies received, spent, and/or otherwise associated with the proceeds from Defendant's, LATICRETE, installation and selling of products that directly infringe upon Plaintiff's, SGM, registered licensed patent;

b. Order Defendant's, LATICRETE, accounts frozen;

c. Order Defendant's, LATICRETE, accounts to be seized until a proper accounting can be conducted;

d. Order Defendant, LATICRETE, to reimburse Plaintiff, SGM, for all amounts improperly spent, and for interest on those amounts;

e. Order Defendant, LATICRETE, to turn over all records, documents, money, banking records, and property that are otherwise associated with the proceeds from Defendant's, LATICRETE, installation and selling of products that directly infringe upon Plaintiff's, SGM, registered licensed patent;

f. Award Plaintiff, SGM, its reasonable costs incurred in prosecuting this action; and

g. Grant such other relief as this Court deems appropriate and just.

## JURY DEMAND

Counter Plaintiff demands trial by jury on all issues so triable as of right by jury

Dated: January 25, 2006

Respectfully submitted,

ROTHSTEIN ROSENFELDT ADLER
**Counsel for Plaintiff**
300 Las Olas Place
300 S.E. 2nd Street
Suite 860
Fort Lauderdale, Florida 33301
Tel: (954) 522-3456
Fax: (954) 527-8663

By: _____
Scott W. Rothstein, Esq.
Florida Bar No.: 765880
Shawn L. Birken, Esq.
Florida Bar No.: 418765

H:\swrdocs\03-8538\SGM.Complaint.doc



US006596074B2

## (12) United States Patent
### Pomeroy

(10) Patent No.: **US 6,596,074 B2**
(45) Date of Patent: **Jul. 22, 2003**

(54) **CEMENTITIOUS PRODUCT WITH PHOSPHORESCENSE**

(75) Inventor: **Robert S. Pomeroy**, Ft. Lauderdale, FL (US)

(73) Assignee: **Southern Grouts and Mortars, Inc.**, Pompano Beach, FL (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/909,071**

(22) Filed: **Jul. 20, 2001**

(65) **Prior Publication Data**

US 2003/0051638 A1 Mar. 20, 2003

(51) Int. Cl.$^7$ ................................. C04B 14/00
(52) U.S. Cl. .............. 106/712; 106/718; 106/724; 106/735; 106/737; 106/741; 106/803; 106/401; 106/442; 106/461
(58) Field of Search .............. 106/712, 718, 106/724, 735, 737, 803, 812, 401, 426, 444, 442, 461, 741

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,172,063 A | | 10/1979 | O'Brill |
| 5,271,754 A | * | 12/1993 | Baurecker et al. ......... 65/18.4 |
| 5,314,536 A | | 5/1994 | Kawasaki |
| 5,374,377 A | * | 12/1994 | Nguyen et al. ......... 252/301.36 |
| 5,424,006 A | * | 6/1995 | Murayama et al. ... 252/301.4 R |
| 5,849,218 A | | 12/1998 | Johausen, Jr. |
| 5,874,491 A | * | 2/1999 | Anders ......................... 523/457 |
| 5,951,752 A | | 9/1999 | Johansen, Jr. |
| 6,005,024 A | | 12/1999 | Anders |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| FR | 1421890 | * | 12/1965 |

* cited by examiner

*Primary Examiner*—Paul Marcantoni
(74) *Attorney, Agent, or Firm*—Oltman, Flynn & Kubler

(57) **ABSTRACT**

The present invention pertains to the use of phosphorescent pigments in cementious materials and allied applications, specifically in use for tile mortars and grouts, pool plasters, wall plasters, cementious roofing materials, cementious surface coatings, cement patches and self leveling compounds. The material will luminesce in the absence of an external source after irradiation with sunlight, visible, ultra-violet (UV) and/or infrared radiation without any degradation in the integrity of the cementious materials from their original applications. The cementious materials need to be capable of being applied by trowel, brush, or spray, forming a strong bond to the surface to which it has been applied. The phosphorescent material should be insoluble in water, compatible with cementious materials, remain fixed in the cementious material, effective at high pH, and produce a long lasting luminescence, for up to 8 to 12 hours, in the visible portion of the spectrum after exposure to a radiation source. So long as the material is exposed to sunlight, no other source of radiation is required. The cementious materials shall be both functional and aesthetically pleasing under normal visible light conditions and in the absence of source excitation, the material will glow in the visible portion of the spectrum, providing light for aesthetic effect and/or safety considerations.

**13 Claims, No Drawings**



US 6,596,074 B2

1

# CEMENTITIOUS PRODUCT WITH PHOSPHORESCENSE

## FIELD OF THE INVENTION

This invention involves the incorporation of a phosphorescent pigment into cementious materials used in construction, concrete restoration, surface decorations, wall and pool plasters, and tile settings materials such as mortars and grouts. These materials will luminesce after charging with electromagnetic radiation. The luminescence will persist after the charging source illumination has ceased. The duration, 8 to 12 hours after the cessation of the source radiation, and intensity of the luminescence will be great enough so that the material will glow or luminesce visibly in low light level conditions for either aesthetic effect and/or safety considerations. The incorporation of these pigments will in no way detract from the performance characteristics of the cementious materials primary function or application. The phosphorescence cementious materials will in no way present a health or environmental hazard.

## BACKGROUND OF THE INVENTION

Cement based compositions enjoy broad application in construction materials, tile setting, wall and pool plasters, stucco, self leveling compounds, roofing tiles and cement patches. The addition of dyes and pigments to the cementious materials has also enjoyed wide application in all of the above mentioned materials. Phosphorescence is a specific type of luminescence in which the emission of radiation resulting from excitation of a crystalline or liquid material occurs after the excitation has ceased, and may last from a fraction of a second to hours or more. The absorbed radiation moves electrons from the lowest state, the ground state, to higher energy states known as excited states. The absorbed radiation may be simple reradiated at the same frequency or energy may be lost to the solvent or lattice and radiated at a lower frequency. In the fluorescence process, the excited electron remains in the same spin state and the relaxation time, the time between absorption and emission of radiation, is very short, on the order of $10^{-5}$ to $10^{-8}$ sec. With phosphorescence, the excited electron undergoes a "spin flip" in a process referred to as intersystem crossing. This electron is now trapped in a system in which the rapid return to the ground state is "forbidden". The key distinction is that the emission of absorbed radiation in phosphorescence can continue long after the cessation of the excitation, or source, radiation. In fluorescence, the emission is very short lived after the source excitation has been terminated. Hence, luminescence in fluorescence requires that the excitation be employed at all times, whereas luminescence from phosphorescence requires the excitation source to "charge" the material and the luminescence can be detected for long periods of time after the source excitation has stopped. The two processes are distinct both in mechanism and characteristic.

The process of phosphorescence in many materials requires the presence of heavy atoms which can be toxic, radioactive or prohibitively expensive. A new class of phosphorescent materials, rare-earth doped calcium aluminates, present unique opportunities for this invention. The rare-

2

earth's represent nonradioactive heavy atoms with little toxicity. The key advantage of this class of phosphorescent materials is that undoped calcium aluminate is already a component of Portland cement. The content of the calcium aluminate varies with the type of cement, mostly controlling the cure rate and early hardness of the cement. Calcium aluminate has very limited solubility in water and the replacement in the crystal of a rare earth metal cation for calcium further reduces the solubility. This substitution of the rare earth doped calcium aluminate for the regular calcium aluminate will result in now other change in the performance of the cement aside from the phosphorescence. The rare earth doped calcium aluminates are also stable and continue to exhibit phosphorescence in the alkaline conditions of wet cement. Many other materials phosphorescence is pH dependent. The conditions present in the preparation and application of cementious materials may well lead to partial or complete degradation of the phosphorescence with other materials.

Previous patents have described inventions similar to this proposal. In the first three related patents, fluorescence is the luminescence mechanism either by direct reference for the implication of constant source irradiation. U.S. Pat. No. 4,172,063 "Abrasion resistant Reflective Marking Composition" limited it's description to fluorescent pigments and in several places refers to the use of either head lights or black lights as an excitation sources, further reinforcing the characteristic properties of fluorescence and not phosphorescence. Also, the targeted application of the patent is in marking materials and only utilized cementious materials for their abrasion resistance and bonding ability. There is no discussion of the use of cementious materials as construction materials or coating with aesthetic appeal. U.S. Pat. No. 5,314,536 "Methods of Making Luminous Construction Materials" focuses on the preparation of luminescent materials, that is embedding luminescent chunks into cementious materials. This patent also limits its description to fluorescence and repeatedly refers to the need for a UV excitation source in order to observe the luminescence. U.S. Pat. No. 5,849,218 "Fluorescent Pool Coating" again limits its invention to fluorescent pigment and makes no mention of phosphorescence.

U.S. Pat. No. 6,005,024 "Phosphorescent Epoxy Overlay" does directly refer to phosphorescence and cites the use of rare earth doped calcium aluminates. However, the targeted application is in transparent overly materials to be used in marking applications. It specifies that the epoxy should be clear or translucent. This specification is key to that invention's use as an overlay material which would not cover existing surface markings or obscure the surface's original appearance. The material into which the phosphorescent pigment is incorporated is epoxy based material and at no time mentions cementious materials, as this would be in direct conflict with the issue of transparency. In this invention, the material should not be transparent and will actually serve as the material from which the surface will derive its appearance. The base material for this invention are cementitous and are related to the construction and tile setting industries.

Other patents (U.S. Pat. Nos. 5,424,006 and 5,665,793) are even further removed as the luminescent material is

3

incorporated into hydrocarbon based systems such as paints. The hydrophobic nature of hydrocarbons would prohibit the inclusion of phosphorescent paints into cementious materials which are prepared for application from their dry form with water.

## SUMMARY OF THE INVENTION

This invention involves the use of rare earth doped calcium aluminates as a phosphorescent pigment incorporated into a cementious matrix. The advantage of phosphorescence over fluorescence is that the sun can serve as the excitation source and after the sun has set the pigmented material will luminesce for several hours at an intensity plainly visible to the eye. The luminescence emitted can serve either a decorative or safety function. Dependent upon the manufacturing process, luminescent spanning the visible spectrum from blue to red is possible. Due to the chemical identity of the phosphorescence pigment, it can be readily incorporated into cementious material with no deleterious effects to the original function of the cementious matrix as a construction material or decorative surface preparation. Due to its insolubility in water and inertness in cementious based materials such as tile mortars and grouts, pool plasters, wall plasters, cementious roofing materials, cementious surface coatings, cement patches and self leveling compounds, the rare earth doped calcium aluminates make a unique match as a additive. The glow in the dark characteristic of phosphorescent materials eliminates the need for excitation sources like UV lamps to be operating in order to detect the luminescence. The phosphorescent pigment can be recharged, repeated, with little or no degradation of the luminescence over time. Research has shown that the phosphorescent pigment is stable in the cementious matrix whether it is in a dry setting like a concrete surface coating or in an aqueous environment like a pool plaster. The phosphorescent pigment can be incorporated into the cementious matrix directly or coated on the silica aggregate commonly used as filler in cement based preparations. The pigment is also compatible as inert filler in polymeric materials such as epoxies, acrylic and polycarbonates which are used in the modification of cementious materials to increase set strength, flexibility, chemical resistance or reduce shrinkage. These pigments are also compatible with other agents incorporated into cementious preparations to effect rheology, pumpability, air entrainment, or the growth microbes. The presence of the pigment in these cementious materials has had no effect on how the material is applied whether by brush, trowl or spray. The intensity of the luminescence is dependent upon the amount of pigment used. Pigment loads from 1 to 30% of the cementious base have been successful in giving perceivable luminescence even in low light level environments. The appearance of these pigments under visible light is a free flowing white powder or may contain some coloration. The white powders blend in with the cementious material and there is no discernible difference in the appearance of the cementious materials under visible irradiation such as sunlight. Removal of the source excitation, the lights turned off indoors or the sun setting outdoors, and the cementious materials now glows in a variety of colors dependent on the rare earth doping of the calcium aluminate.

4

## DETAILED DESCRIPTION OF THE INVENTION

The following examples are to more fully demonstrate the invention. Minor variation of these compositions will be considered equivalent by those skilled in the art and are included within the scope of the invention.

### EXAMPLE 1

Thin Set

| | |
|---|---|
| 62 | parts by weight silica sand |
| 37.2 | parts by weight Portland cement, gray or white |
| 0.2 | parts by weight ethyl cellulose ether (thickener) |
| 1 | part by weight rare earth doped calcium aluminate (phosphorescent pigment) |

Example 1 represents a typical formulation for a thin set mortar. The type of Portland cement can be any variety, the color, fineness of the grind and the exact composition depends on the application. The silica sand is typically derived from either alluvial deposits or crushed from a quartzite quarry. The appearance of the sand is white with a small amount of colored material being acceptable. The size of the sand particles depends upon the desired characteristics of the cementious material. The ethyl cellulose ether, Walocel MKX 40000-Bayer serves as a thickening agent which enhances trowelability, open time, and set strength. The material is mixed 25 pounds dry material with 1 gallon of water. Mix thoroughly and let stand 5 minutes. Remix prior to use.

The intensity of the phosphorescence is increased by simply increasing its presence in the formulation

### EXAMPLE 2

Thin Set

| | |
|---|---|
| 62 | parts by weight silica sand |
| 37.2 | parts by weight Portland cement, gray or white |
| 0.2 | parts by weight ethyl cellulose ether (thickener) |
| 10 | part by weight rare earth doped calcium aluminate (phosphorescent pigment) |

### EXAMPLE 3

Stucco

| | |
|---|---|
| 17.9 | parts by weight white cement |
| 10.7 | parts by weight lime, CaO |
| 33.3 | parts by weight blended silica sands |
| 38 | parts by weight calcium carbonate |
| 0.07 | parts by weight calcium stearate |
| 1 | parts by weight phosphorescent pigment |

Add sufficient clean cool water to dry mix to form a smooth trowelable mix. Stir occasionally during use.

### EXAMPLE 4

#### Polymer Modified Thin Set

| | |
|---|---|
| 37.5 | parts by weight white cement |
| 55 | parts by weight silica sand |
| 0.25 | parts by weight Walocel (Thickener) |
| 4.3 | parts by weight white clay |
| 1 | parts by weight gypsum (hydrated) |
| 2 | parts by weight Vinyl Acetate/Ethylene Redispersible Powder (VAc/E) |
| 1 | parts by weight phosphorescent pigment |

Add 1.5 gallon of cool, clean water to 50 pounds dry material to obtain a smooth trowelable mix. Thoroughly mix. Let stand 5 to 10 minutes, then remix. Stir occasionally during use. Modification will also extend to the use of acrylic additives.

### EXAMPLE 5

#### Pool Plaster

| | |
|---|---|
| 34.2 | parts by weight white cement |
| 0.3 | parts by weight fiber |
| 0.2 | parts by weight Vinyl Acetate/Ethylene Redispersible Powder |
| 57 | parts by weight silica sand |
| 8.4 | parts by weight colored silica sand |
| 10 | parts by weight phosphorescent pigment |

A variation of the above formulation is to coat the colored silica aggregate with the phosphorescent pigment.

### EXAMPLE 5A

#### Pool Plaster

| | |
|---|---|
| 34.2 | parts by weight white cement |
| 0.3 | parts by weight fiber |
| 0.2 | parts by weight Vinyl Acetate/Ethylene Redispersible Powder |
| 57 | parts by weight silica sand |
| 8.4 | parts by weight colored phosphorescent silica sand |

The difference being the effect. In Example 5 the phosphorescent is uniformly distributed throughout the pool plaster. In Example 5A, the phosphorescent is limited to the colored aggregate in the pool plaster created a speckled effect. The amounts of the coated aggregate can be increased with a decrease in the silica sand. The intensity of the phosphorescent depends on the concentration of the phosphorescent pigment used in the coating process. The mixing directions for the pool plaster are similar to those above.

### EXAMPLE 6

#### Grout

| | |
|---|---|
| 34.2 | parts by weight white cement |
| 0.3 | parts by weight Walocel |
| 0.2 | parts by weight Vinyl Acetate/Ethylene Redispersible Powder |
| 57 | parts by weight silica sand |

-continued

| | |
|---|---|
| 2 | parts by weight pigment, Bayer iron oxide pigments, titanium dioxide, phthalo blues and greens |
| 10 | parts by weight phosphorescent pigment |

### EXAMPLE 7

#### Polymer Modified Grouts

| | |
|---|---|
| 5 | parts by weight epoxy hardener |
| 69 | parts by weight silica sand |
| 2.9 | parts by weight hydroxy modified resin - To improve flow (Neville) |
| 1.1 | parts by weight curing agent (Air Products) |
| 19 | parts by weight epoxy resin |
| 0.9 | parts by weight fumed silica (Cabosil) |
| 1.7 | parts by weight titanium dioxide |
| 10 | parts by weight phosphorescent pigment |

The titanium dioxide imparts the white coloration to the epoxy grout and also enhances the phosphorescence by whitening the materials and increasing its reflectivity. This is an important distinction of the epoxy overlay material described in U.S. Pat. No. 6,005,024 which desired transparent or translucent characteristics to the material so as to be used as a marking overlay material. Here the epoxy grout serves as both the tile setting material and the visible material between tiles. The phosphorescence is not simply overlaying the grout but is part of the grout itself. Transparency is not desired as silica encased in epoxy is not a desired aesthetic effect of the tile grout. Non phosphorescent pigments can also be incorporated into the above formulation to color the grout to create a color match or pleasing contrast to the tile. The phosphorescent pigment will impart no effect in visible light and will only be apparent in darkness or low light level environments. This formulation also extends to other epoxy, acrylic and polycarbonate polymeric materials which may be used to extend ranges of stain resistance, hardness and appearance. A mildicide or bacteroicide may also be included to reduce the growth of microbes and fungus on the surface of the grout.

### EXAMPLE 8

#### Self Leveling Compound

| | |
|---|---|
| 9.6 | parts by weight calcium aluminite cement (SECAR 51/SECAR 71) |
| 28.8 | parts by weight white or gray cement |
| 1.2 | parts by weight plasticizer (Melment F-10) |
| 7.7 | parts by weight metakaolin clay (MetaMax) |
| 4.8 | parts by weight VAc/E redispersable powder (RP224 - Wacker) |
| 3.3 | parts by weight defoamer |
| 44.2 | parts by weight silica sand |
| 0.5 | parts by weight lithium carbonate |
| 2 | parts by weight nonphosphorescent pigments |
| 10 | parts by weight phosphorescent pigments |

Sufficient water is added to create a liquid with a viscosity similar to that of a milk shake. The compound is then applied to a surface where it seeks to spread out, leveling the surface. The material dries and hardens quickly.

EXAMPLE 9

Cement Patch

| | |
|---|---|
| 55.5 | parts by weight type III cement |
| 5 | parts by weight fondue cement |
| 14 | parts by weight calcium aluminite cement (SECAR 51/SECAR 71) |
| 0.5 | parts by weight lithium carbonate |
| 0.2 | parts by weight sodium citrate |
| 0.1 | parts by weight thickener (Walocel) |
| 4.44 | parts by weight VAc/E Redispersible powder (RP 2010-Wacker) |
| 6.65 | parts by weight fine silica sand |
| 10 | parts by weight phosphorescent pigment |

The cement patch is mixed with enough water to create a creamy consistency. The material is spread over the surface. It can be used to fill cracks, level the surface or finish to a feather edge. Again use of other non-phosphorescent pigments as colorants is covered by this formulation.

EXAMPLE 10

Concrete Surfacing Compound

| | |
|---|---|
| 49 | parts by weight white cement |
| 2 | parts by weight gray cement |
| 49 | parts by weight silica sand |
| 5 | parts by weight VAc/E Redispersible powder |
| 2 | parts by weight non-phosphorescent pigment |
| 10 | parts by weight phosphorescent pigment |

The dry material is mixed with enough cool, clean water to create a smooth flowing liquid with a flow similar to that of a milk shake. The material can be applied by broom, brush, trowel, or sprayed from a hopper gun. Typically applied as a thin coating over an existing concrete slab.

What is claimed is:

1. A phosphorescent pigment modified cementitious material comprising a Portland cement and mixed in said cement, a rare earth doped calcium aluminate phosphorescent pigment that produces a long lasting phosphorescence for up to 8 hours in the visible portion of the spectrum after exposure to a radiation source.

2. The phosphorescent pigment modified cementitious material of claim 1, further comprising a non-phosphorescent pigment.

3. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 62 parts by weight silica sand; 37.2 parts by weight Portland cement, gray or white; 0.2 parts by weight ethyl cellulose ether; and 1 part by weight rare earth doped calcium aluminate phosphorescent pigment.

4. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 62 parts by weight silica sand; 37.2 parts by weight Portland cement, gray or white; 0.2 parts by weight ethyl cellulose ether thickener; and 10 parts by weight rare earth doped calcium aluminate phosphorescent pigment.

5. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 17.9 parts by weight white cement; 10.7 parts by weight lime, CaO; 33.3 parts by weight blended silica sands; 38 parts by weight calcium carbonate; 0.07 parts by weight calcium sterate; and 1 part by weight phosphorescent pigment.

6. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 37.5 parts by weight white cement; 55 parts by weight silica sand; 0.25 parts by weight thickener; 4.3 parts by weight white clay; 1 part by weight gypsum; 2 parts by weight Vinyl Acetate/Ethylene Redispersible Powder; and 1 part by weight phosphorescent pigment.

7. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 34.2 parts weight white cement; 0.3 parts by weight fiber; 0.2 parts by weight Vinyl Acetate/Ethylene Redispersible Powder; 57 parts by weight silica sand; 8.4 parts by weight colored silica sand; and 10 parts by weight phosphorescent pigment.

8. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 34.2 parts by weight white cement; 0.3 parts by weight fiber; 0.2 parts by weight Vinyl Acetate/Ethylene Redispersible Powder; 57 parts by weight silica sand; and 8.4 parts by weight colored phosphorescent silica sand.

9. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 34.2 parts by weight white cement; 0.3 parts by weight ethyl cellulose ether; 0.2 parts by weight Vinyl Acetate/Ethylene Redispersible Powder; 57 parts by weight silica sand; 2 parts by weight pigment, iron oxide pigments, titanium dioxide, phthalo blues and greens; and 10 parts by weight phosphorescent pigment.

10. A phosphorescent pigment modified cementatious material according to claim 1 consisting essentially of 5 parts by weight epoxy hardener; 69 parts by weight silica sand; 2.9 parts by weight hydroxy modified resin; to improve flow; 1.1 parts by weight curing agent; 19 parts by weight epoxy resin; 0.9 parts by weight fumed silica; 1.7 parts by weight titanium dioxide; and 10 parts by weight phosphorescent pigment.

11. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 9.6 parts by weight calcium aluminite cement; 28.8 parts by weight white or gray cement; 1.2 parts by weight plastisizer; 7.7 parts by weight metakaolin clay; 4.8 parts by weight redispersable powder; 3.3 parts by weight defoamer; 44.2 parts by weight silica sand; 0.5 parts by weight lithium carbonate; 2 parts by weight non-phosphorescent pigment; and 10 parts by weight phosphorescent pigments.

12. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 55.5 parts by weight type III cement; 5 parts by weight fondue cement; 14 parts by weight calcium aluminite cement; 0.5 parts by weight lithium carbonate; 0.2 parts by weight sodium citrate; 0.1 parts by weight thickener; 4.44 parts by weight Redispersible powder; 6.65 parts by weight fine silica sand; and 10 parts by weight phosphorescent pigment.

13. A phosphorescent pigment modified cementitious material according to claim 1 consisting essentially of 49 parts by weight white cement; 2 parts by weight gray cement; 49 parts by weight silica sand; 5 parts by weight Redispersible powder; 2 parts by weight non-phosphorescent pigment; and 10 parts by weight phosphorescent pigment.

* * * * *

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I(a) PLAINTIFFS** – SOUTHERN GROUTS & MORTARS, INC.

**DEFENDANTS** – LATICRETE INTERNATIONAL, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) - BROWARD

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) SHAWN L. BIRKEN, ESQ. ROTHSTEIN ROSENFELDT ADLER, 300 LAS OLAS PLACE, 300 S.E. 2ND STREET, SUITE 860, FT. LAUDERDALE, FLORIDA 33301 TELEPHONE: 954-522-3456

ATTORNEYS (IF KNOWN)

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, **MONROE**, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Case Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporation and Principal Place of Business in This State | ☐ | ☐ 1 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporation and Principal Place of Business in Another State | ☐ | ☐ 2 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ | ☐ 3 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

**IVa.** 3 days estimated (for both sides) to try entire case

**NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 362 Pers. Injury-Med Malpractice | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury-Prod Liability | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl. Veterans) B | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 861 HIA (1395ff) | ☐ 850 Securities /Commodities /Exchange |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending B | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personnel Property Damage | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 385 Property Damage Product Liability | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | **A LABOR** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | ☐ 530 General* | ☐ 710 Fair Labor Standards Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 720 Labor Management Relations B | **A FEDERAL TAX SUITS** |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other* | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights *A or B | ☐ 740 Railway Labor Act | ☐ 871 IRS-Third Party 26b USC 7609 |
| ☐ 290 All Other Real Property |  |  | ☐ 790 Other Labor Litigation | ☐ 900 Appeal of Fee Determination under Equal Access to Justice |
|  |  |  | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 950 Constitutionality of State Statutes |
|  |  |  |  | ☐ 890 Other Statutory Actions* *A or B |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A ☐ UNDER F.R.C.P 23
CLASS ACTION - No
DEMANDs Undetermined
☐ Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ DOCKET NUMBER _____

DATE January 23, 2006
SIGNATURE OF ATTORNEY OF RECORD
Shawn L. Birken, Esq.

UNITED STATES DISTRICT COURT
FOR OFFICE USE ONLY: Receipt No. _____  Amount _____
Date Paid: _____  M/ifp: _____

S F 1-2
REV 9/94

FTL/LNP/266449/5pld01!.DOC/1/23/06/26094.010400

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplement the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standards abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney or record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, please an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the depute clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceeding initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Refiled. (4) Check this box for cases refiled in the district court. Attach copy of order.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

(rev. 6/90)