UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60119-CIV-COHN/SNOW

SOUTHERN GROUTS & MORTARS, INC.

      Plaintiff,                              **CLOSED CIVIL CASE**

vs.

LATICRETE INTERNATIONAL, INC.

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Laticrete International Inc.'s

Motion for Summary Judgment [DE 19].  The Court has carefully considered the Motion

[DE 19] and Memorandum of Law thereto [DE 20], Plaintiff's Response [DE 25] and

Defendant's Reply [DE 27], as well as the exhibits, the record in the above-captioned

case and the argument heard by the undersigned on October 26, 2006 and is otherwise

fully advised in the premises.

## I.  BACKGROUND

Plaintiff filed the instant case on January 26, 2006 alleging the following four

counts: 1) Patent Infringement pursuant to 35 U.S.C. § 271, et. seq. (Count I); 2)

Federal Common Law Unfair Competition (Count II); 3) Violation of Florida Deceptive

and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.204, et. seq. (Count III[1]; 4)

Demand for accounting to determine the amount of profits Defendant has received from

---

[1]  Although Count III of the Complaint cites to the FDUTPA sections, it mistakenly
refers to the statute as the Florida Deceptive Uniform Trade Practices Act.  It is clear
from the pleadings that Plaintiff intended to refer to FDUTPA.

the alleged actions (Count IV).  The case involves the alleged unlawful infrigement of

Patent No. US 6,596,074 B2 ("'074 Patent") which was issued to Plaintiff on July 22,

2003.  (Mot. [DE 20], Exh. A.)  Defendant now moves for summary judgment on all four

counts.[2]

The '074 Patent covers a modified cementious material which luminesces from

being charged with electromagnetic radiation for up to 8 hours after the cessation of the

charging source.  (Id., § 1.)[3]  The '074 Patent contains thirteen claims.  Claim 1 is the

portion of the Patent at issue in this case.  It states that the patented product is "[a]

phosphorescent pigment modified cementitious material comprising a Portland cement

and mixed in said cement, a rare earth doped calcium aluminate phosphorescent

pigment that produces a long lasting phosphorescence for up to 8 hours in the visible

portion of the spectrum after exposure to a radiation source."  (Id., § 7, Claim 1.)

Defendant created and marketed an epoxy-based product known as the Laticrete

SpectraLOCK™ Dazzle Glow product ("Laticrete product").  (Compl., ¶ 17 [DE 1].)

Defendant argues that it did not infringe upon Plaintiff's patent because its product does

---

[2]  The parties exchanged Rule 26(a) disclosures on April 13, 2006 and commenced discovery soon thereafter.  (Mot., p. 2.)  Each party submitted and responded to interrogatories and requests for production.  (Id.)  No depositions were conducted.  The Scheduling Order issued by United States Magistrate Judge Lurana S. Snow [DE 17] set the fact discovery cutoff on October 20, 2006 and ordered that expert discovery be completed by December 1, 2006.  The parties filed a joint motion to stay discovery pending resolution of Defendant's Motion for Summary Judgment [DE 23] which was granted by this Court [DE 24].  Plaintiff's Response to the Motion for Summary Judgment [DE 25] does not argue that the Motion was prematurely filed.  Therefore, the Court will address the Motion on its merits.

[3]  The '074 Patent contains numbers at the top of each column.  There are two columns of text on each page of the Patent.  For clarity, the Court will refer to these column numbers as sections when referring to information contained in the '074 Patent.

not contain Portland cement.  Defendant further alleges that summary judgment should

be granted in favor of Defendant on Counts II and III because these allegations

reiterate the patent infringement arguments contained in Count I and are not

recognized causes of action in a patent infringement context.  Plaintiff argues that the

'074 Patent does not require the inclusion of Portland cement in the material and that

the inclusion of epoxy-based material in Defendant's product provides a valid claim for

patent infringement.  Plaintiff relies on the language of Examples 6 and 7 in the '074

Patent which are intended to more fully demonstrate the patented product and do not

specifically refer to Portland cement.  (Mot. [DE 20], Exh. A, §§ 5-6.)  Plaintiff further

alleges that the unfair competition and FDUTPA counts should stand because they are

separate and distinct causes of action.

## II.  ANALYSIS

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The stringent burden of

establishing the absence of a genuine issue of material fact lies with the moving party.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant

summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved

against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the

3

basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  <u>Id.</u> at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electronic Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. <u>Anderson</u>, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50.

**B.  Patent Infringement Pursuant to 35 U.S.C. § 271, et. seq. (Count I)**

A patentee can prove patent infringement by establishing that a product either literally infringed the patent or infringed the patent under the doctrine of equivalents.  In

4

this case, Plaintiff alleges that it can succeed on its claim for patent infringement under both doctrines.

### a.  Literal Infringement

The burden to show literal infringement is on the patentee by a preponderance of the evidence.  Braun, Inc. v. Dynamics Corp., 975 F.2d 815, 819 (Fed. Cir. 1992).  A literal patent infringement analysis occurs in two steps.  First, the court must determine, as a matter of law, the scope and meaning of the asserted claims in the patent.  Biagro Western Sales, Inc. v. Grow More, Inc., 423 F.3d 1296, 1302 (Fed. Cir. 2005); Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir. 1998).  "'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The Patent Act requires a patent application to contain a specification which includes "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. §§ 111-12.  A claim may be independent or dependent.  35 U.S.C. § 112.  Dependent claims must contain a reference to another claim and then provide a further limitation to that claim.  Id.  "It is elementary that claim construction begins with, and remains focused on, the language of the claims."  Biagro, 423 F.3d at 1302.  "Patent claims should also be construed in light of the prosecution history, which, like the patent itself, has been designated as part of the 'intrinsic evidence.'"  Id.  Patent claims are given their "ordinary and customary meaning" which is defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective

filing date of the patent application." Phillips, 415 F.3d at 1312-13 (citations omitted). The objective person of ordinary skill is deemed to interpret the claim at issue in the context of the entire patent. Id. at 1313.

Second, the court must make a factual infringement determination by comparing the claims as construed by the court to the allegedly infringing product. Id; Biagro, 423 F.3d at 1302. In order for a composition to literally infringe a claim, each and every element stated in the patent must be found in the accused product exactly as stated in the patent. Frank's Casting Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1377 (Fed. Cir. 2004); Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). "'Literal infringement . . . requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification.'" Frank's, 389 F.3d at 1377 (quoting Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed. Cir. 1990)). If even one claim limitation is missing or not met, there is no literal infringement. Mas-Hamilton, 156 F.3d at 1211.

In this case, the Court must only engage in the first portion of the literal patent infringement analysis because the parties agree that the Laticrete product does not contain Portland cement. (Mot. [DE 20], Exh. B, p.2) (Plaintiff's Response to Defendant's First Set of Requests for Admissions indicating that Plaintiff admits that the Laticrete product does not contain Portland cement). The primary issue before the Court is whether, as a matter of law, Claim 1 of the '074 patent requires the patented material to contain Portland cement or whether the use of an epoxy material without the use of Portland cement creates a valid claim for patent infringement. Since the parties

agree on the composition of the Laticrete product, there are no remaining issues of fact. If the Court determines that as a matter of law the '074 Patent requires the inclusion of Portland cement, summary judgment shall be granted in favor of Defendant.

Claim 1 of the '074 Patent provides that the patented product is "[a] phosphorescent pigment modified cementitious material comprising a Portland cement and mixed in said cement, a rare earth doped calcium aluminate phosphorescent pigment that produces a long lasting phosphorescence for up to 8 hours in the visible portion of the spectrum after exposure to a radiation source." (Mot., Exh. A, § 7) (emphasis added). Defendant argues that it is clear from the plain language of Claim 1 that a product can only be found to literally infringe upon the '074 Patent if it contains Portland cement. Plaintiff argues that the term "comprising" as used in Claim 1 neither limits nor requires the use of Portland cement. Rather, Plaintiff alleges that the patent allows for the use of other material such as epoxy. To support this assertion, Plaintiff directs the Court to the examples provided in the patent intended to "more fully demonstrate the invention" to the reader of the patent. (Mot., Exh. A, § 4.) Plaintiff notes that Examples 6 and 7 discuss epoxy but not specifically Portland cement.

"[I]t is well-established that 'comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." In re Crish, 393 F.3d 1253, 1257 (Fed. Cir. 2004) (citations omitted). Relying on SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278 (Fed. Cir. 2005), Plaintiff argues that the term "compromising" does not foreclose the use of additional elements and does not necessarily require the use of Portland cement. Plaintiff's argument is misplaced.

SanDisk supports the well-established principle that the term "comprising" stands for the proposition that the named elements are essential, but that other elements may be included. Id. at 1284. In SanDisk, the court evaluated whether every sector of the patented computer system at issue had to be partitioned. Reversing the district court, the Federal Circuit found that since the patent's claim language required only that the product "comprise" some partitioned sectors, other sectors could have different configurations. Id. at 1284-85. This holding upheld the above-stated principle. In essence, as noted by Defendant, "if the invention is claimed as 'comprising' elements X and Y, it may also 'read on' and cover a device with elements X, Y, and Z." Donald S. Chisum, 3-8 Chisum on Patents § 8.06(1)(b)(ii)(A) (2006).

Here, the language of Claim 1 requires that the invention "comprise" Portland cement. As stated in SanDisk, the product may include other materials such as epoxy, but only products that include Portland cement may be found to have literally infringed upon the '074 Patent. Since the Laticrete product does not include Portland cement, there are no issues of material fact and, as a matter of law, Plaintiff cannot establish that Defendant literally infringed the '074 Patent.

### b.  Doctrine of Equivalents

The doctrine of equivalents is sometimes applied in patent cases to enable the claims of a patent to cover products not within the literal scope of the claim if the product only differs insubstantially from the claim language. Hilton Davis Chem. Co. v. Warner Jenkinson Co., 35 USPQ 2d 1641 (Fed. Cir. 1996). One way to show an insubstantial difference is to establish that the substituted element provides substantially the same functions in substantially the same way to achieve substantially

the same result.  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 35

(1997).  The burden to show infringement under the doctrine of equivalents is on the

patentee by a preponderance of evidence.  Braun Inc. v. Dynamics Corp., 975 F.2d 815

(Fed. Cir. 1992).

      "Prosecution history estoppel is a legal limitation on the doctrine of equivalents."

Biagro, 423 F.3d at 1301.  Any "narrowing amendment made to satisfy any requirement

of the Patent Act may give rise to an estoppel."  Festo Corp. v. Shoketsu Kinzoku

Kogyo Kabushiki Co., 535 U.S. 722, 736 (2002) ("Festo VIII").[4]  "When . . . the patentee

originally claimed the subject matter alleged to infringe but then narrowed the claim in

response to a rejection, he may not argue that the surrendered territory comprised

unforeseen subject matter that should be deemed equivalent to the literal claims of the

issued patent."  Id. at 733-34.  In Festo, the "[Supreme] Court established a

presumption that a narrowing amendment made for a reason of patentability surrenders

the entire territory between the original claim limitation and the amended claim

limitation."  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359,

1365 (Fed. Cir. 2003) ("Festo IX") remanded from Festo VIII, 535 U.S. 722.  However,

the presumption is not a complete bar to the doctrine of equivalents.  Id.  A patentee

may overcome the presumption.  Id.  In analyzing whether a narrowing amendment

relinquishes a particular equivalent, the patentee bears "the burden of showing that the

---

    [4] The Festo proceedings represent a long line of cases from the United States
Supreme Court, the United States Court of Appeals for the Federal Circuit and the
United States District Court for the Southern District of Massachusetts.  The references
herein to "Festo VIII" and "Festo IX" are consistent with the Federal Circuit's designation
of these Orders.

amendment does not surrender the particular equivalent in question." Festo VIII, 535 U.S. at 740.  The patentee must "show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." Id. at 741; Festo IX, 344 F.3d at 1365; see also Allen Engineering Corp. v. Bartell Indus., Inc., 299 F.3d 1336 (Fed. Cir. 2002).

To determine whether the patentee has met its burden, the court must first decide "whether an amendment filed in the Patent and Trademark Office ("PTO") has narrowed the literal scope of a claim." Festo IX, 344 F.3d at 1367.  Second, the court must determine "whether the reason for that amendment was a substantial one relating to patentability." Id.  If the court determines that an amendment narrowed the scope of the claim and was made for a substantial reason relating to patentability, the presumption that the patentee surrenders the entire territory between the original claim limitation takes hold and the court must decide "the scope of the subject matter surrendered by the narrowing amendment." Id.   The patentee may, however, overcome the presumption by establishing that: 1) "the alleged equivalent would have been unforeseeable at the time of the narrowing amendment;" 2) "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question;" or 3) "there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." Id. at 1368 (citing Festo VIII, 535 U.S. at 741).  If the patentee fails to rebut the presumption, the doctrine of prosecution history estoppel applies and the patent owner is estopped from relying on the doctrine of equivalents. Id. at 1366-67.

In this case, Defendant argues that the prosecution history of the '074 Patent

shows that Plaintiff narrowed the scope of Claim 1 in order to overcome a rejection of the patent application.  Specifically, Defendant contends that Plaintiff had to amend its claim to require the inclusion of Portland cement in its product.  Plaintiff's expert opines that the use of Portland cement as stated in Claim 1 is not mandated by the '074 Patent because other portions of the '074 Patent provide alternative methods for producing the product.  (Aff. of Dr. M.. Bonner Denton, Resp., Exh. D, ¶ 15.)  In essence, Plaintiff asserts that it did not intend to disclaim the use of epoxy as an equivalent material when it added Portland cement to the language of Claim 1 of the '074 Patent.

The Court finds that Plaintiff is estopped from arguing the doctrine of equivalents pursuant to the doctrine of prosecution history estoppel.  It is well-settled that "[t]he claims alone delimit the right to exclude; only they may be infringed."  Envtl. Instruments, Inc. v. Sutron Corp., 877 F.2d 1561, 1564 (citing SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1007, 1120-22 (Fed. Cir. 1985)) abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 234 F.3d 558 (Fed. Cir. 2000). In other words, although the examples provided in a patent supplement the claims, they do not form the basis for a patent infringement claim when the claims and the prosecution history establish otherwise.  In this case, Plaintiff argues that Examples 6 and 7 of the '074 Patent tend to show that Portland cement is not a required element. However, a review of the prosecution history indicates that Plaintiff submitted the following amendment to Claim 1 to the PTO:

> 1.  (Amended) A phosphorescent pigment modified cementitious material comprising a Portland cement and a water insoluble uncoated phosphorescent pigment [capable of producing] that produces a long lasting phosphorescence for up to 8 [to 12] hours in the visible portion of the spectrum after exposure to a radiation source.

('074 Patent Prosecution History, October 15, 2002 Amendment, Mot., Exh. D, p. 2.)[5]
The Remarks to the proffered amendments specifically note that "Portland cement has
been introduced into Claim 1"  (Id., p. 5) and that in light of the proposed amendments
"the application is believed to be ready for final allowance" (Id., p. 6).

Even though Plaintiff's product may be made using an epoxy material and
without Portland cement, it is clear from the prosecution history that Plaintiff submitted a
narrowing amendment which limited the scope of the patent by specifically adding
Portland cement.  The Remarks accompanying the October 15, 2002 Amendments
indicate that this amendment was a substantial amendment relating to patentability.  As
Plaintiff's Response states, "Pursuant to the first Office Action, the applicants were
instructed to insert 'Portland cement' into Claim 1 because the two Ander's Patents No.
5,874,491 and 6,005,024 taught a composition comprising epoxy hardener and a
phosphorescent material."  (Resp., p. 13.)  Therefore, the presumption that a narrowing
amendment made for a reason of patentability surrenders the entire territory between
the original claim limitation and the amended claim limitation attaches to this case.
Plaintiff bears the burden of proving that it did not include the equivalent in its claim for
one of the reasons stated above.

Plaintiff's Response does not expressly address any of the exceptions and
Plaintiff did not specifically discuss any of the exceptions during the October 26, 2006
hearing.  The first and third exceptions clearly do not apply to this case.  However, it

---

[5]  Pursuant to PTO Rules, 37 C.F.R. § 1.21, an amendment is clearly indicated
by underlying the added portions and bracketing or striking-through the text being
deleted.  The text here is printed exactly as it appears in the October 15, 2002
Amendments.

could be deduced that Plaintiff is arguing that "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question."  The determination of whether this exception applies "focuses on the patentee's objectively apparent reason for the narrowing amendment."  Festo IX, 344 F.3d at 1369.  This reason should be discerned from the prosecution history record.  Id.; Biagro, 423 F.3d at 1306.   Since additional evidence is generally not favored, the Court can decide this issue in the summary judgment phase.  Festo IX, 344 F.3d at 1369.

In its Response and during the hearing on the instant Motion, Plaintiff referred to a letter sent by the inventor to the examiner that mentions an epoxy grout, not Portland cement.  (Resp., p. 5, Exh. E.)  Although the letter does not contain a date, Plaintiff submits, and Defendant does not contest, that the letter was sent after the October 15, 2002 Amendments were filed.  Regardless, the letter does not suggest that the language of Claim 1 should be amended.  It also does not establish that epoxy is unrelated to Portland cement.  Therefore, this letter fails to satisfy Plaintiff's burden required to overcome the presumption created by the doctrine of prosecution history estoppel.

As Plaintiff is unable to establish literal infringement and is estopped from arguing the doctrine of equivalents in this case, summary judgment shall be granted in favor of Defendant on Plaintiff's claim for patent infringement.

## C.  Federal Common Law Unfair Competition

Defendant also alleges that the Court should grant summary judgment in favor of Defendant on Count II of the Complaint because Plaintiff's claim for federal common law unfair competition is not a recognized cause of action in the patent infringement

context.  Count II of the Complaint alleges that Defendant's actions constituted unfair competition because they were intended to cause customer confusion and to divert business from Plaintiff to Defendant.  Plaintiff alleges that this claim should stand because it is separate and distinct from the patent infringement claim.

Defendant alleges that unfair competition claims are proper in trademark but not patent cases.  This argument is not justified.  As discussed in Section II.D of this Order, the Federal Circuit has allowed claims for unfair competition in the patent law context.  However, neither party cites, and the Court has not found, law supporting a claim for federal common law unfair competition.  Rather, it appears that Plaintiff should have pled this as a statutory claim for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125.

The Lanham Act prohibits the use of false or misleading words, terms, names, symbols or devices which are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the product at issue.  15 U.S.C. § 1125(a)(1)(A).  The Act further prohibits the misrepresentation of the "nature, characteristics, qualities, or geographic origin" of a good or service in commercial advertising.  15 U.S.C. § 1125(a)(1)(B).  To establish a claim for unfair competition under the Lanham Act, a plaintiff must establish (1) that the defendant used false or misleading words, terms, names, symbols or devices about the plaintiff's goods or services; (2) that the device actually deceives or is likely to deceive a substantial segment of the intended audience; "(3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement to enter interstate commerce; and (5) that the statement results in actual or probable injury to

14

the plaintiff." <u>Zenith Elec. Corp. v. Exzec, Inc.</u>, 182 F.3d 1340, 1348 (Fed. Cir. 1999) <u>cited by</u> <u>Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.</u>, — F.3d —, Case Nos. 05-1479, 05-1480, 06-1002, 2006 WL 2720885, at *12 (Fed. Cir. Sept. 25, 2006) (adopting the elements delineated in <u>Zenith</u> for false advertising claims under the Lanham Act to the unfair competition context).

In this case, the Complaint does nothing more than argue that the advertising of the allegedly infringing product caused consumer confusion, a reduction in Plaintiff's sales, and injury to Plaintiff's reputation and good will.  Plaintiff essentially argues that the promotion of the Laticrete product constitutes unfair competition because the product infringes on the '074 Patent.  Plaintiff has not established why Defendant's representations were false or misleading other than to allege that they marketed products that infringed on the '074 Patent.  During the hearing on the instant Motion, the Court asked Plaintiff whether its claim for unfair competition could stand independently from its claim for patent infringement.  Although Plaintiff answered in the affirmative, it did not provide support for this contention and the Court finds that Plaintiff has failed to establish how, as a matter of law, the materials used by Defendant were false or misleading independent of the claim for patent infringment.  The materials advertised the product created by Defendant which, as determined above, did not infringe upon the '074 Patent.  As such, since Plaintiff's claim for patent infringement has not survived Defendant's Motion for Summary Judgment, there is no independent basis for the unfair competition claim and summary judgment shall be granted in favor

of Defendant as to Count II of the Complaint.[6]

## D.  Florida Deceptive and Unfair Trade Practices Act

Count III mimics the language of Count II, but asserts unfair competition under state rather than federal law.  Count III alleges that Defendant violated FDUTPA by actively marketing a product which violates Plaintiff's patent.  Plaintiff's Response alleges that its FDUTPA claim is based on the assertions made in Defendant's advertisements of the Laticrete product.  (Resp., p. 15, Exh. G.)  Plaintiff alleges that the statements in the advertisements lead consumers to believe that the Laticrete product is a unique phosphorescent product rather than the product patented by the '074 Patent.  (Id.)

Unlike a claim for federal common law unfair competition, a claim for a FDUTPA violation is a viable cause of action.  The Federal Circuit has not decided the issue of whether federal patent law principles preempt a claim for state common law unfair competition.  Nagle Indus., Inc. v. Ford Motor Co., Case No. 97-1449, 1999 WL 447080 (Fed. Cir. June 22, 1999) (referenced in table at 194 F.3d 1339 (Fed. Cir. 1999)).  In Nagle, the district court found that patent law preempted the state law unfair competition claim.  Id., at *2.  On appeal, the Federal Circuit determined that the

---

[6]  The following bases may warrant a district court's denial of leave to amend: "'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of amendment.'"  Thomas v. Davie, 847 F.2d 771, 774 (11th Cir. 1988) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).  Here, since the Court finds that Plaintiff has not established a basis for a common law unfair competition claim or, alternatively, for a Lanham Act claim that can survive independent of its claim for patent infringement, granting Plaintiff leave to amend its Complaint to plead a Lanham Act claim would be futile.

plaintiffs failed to present any issues of material fact, and as a matter of law, summary judgment should have entered in favor of defendant on plaintiff's claim for state common law unfair competition.  Id., at *8-*9.  On this basis, the court evaluated the merits of the summary judgment motion and expressly stated that it would not reach the issue of preemption.  Id., at *9.

FDUTPA, namely Fla. Stat. § 501.204(1), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  In deciding what is an unlawful act under § 501.204(1), § 501.204(2) states that "great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)."  The Eleventh Circuit has held that FDUTPA provides victims of deceptive or unfair acts or practices in trade or commerce with private causes of action that are unavailable under federal law.  Nieman v. Dryclean U.S.A. Franchise Co., Inc., 178 F.3d 1126, 1128-29 (11th Cir. 1999).  Subsection 501.204(2) was not intended to preclude private causes of action under FDUTPA or to limit standing of private persons under FDUTPA.  Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 104-05 (Fla. 1st DCA 1996).  Rather, when deciding whether a particular conduct violates FDUTPA, courts should look to whether the FTC Act and federal courts find such conduct to be an unfair method of competition or an unconscionable, unfair, or deceptive act or practice under the FTC Act .  Id.

As stated above, although patent law does not necessarily preempt state law causes of action for unfair competition, FDUTPA is specifically designed to provide injured parties with private causes of action that are unavailable under federal law.  In

this case, Plaintiff's FDUTPA claim rests entirely on the actions taken by Defendant to promote and sell the Laticrete product.  Plaintiff focuses specifically on Defendant's product packaging and marketing materials.  It is uncontested that Defendant used the term "patent pending" on its packaging (Compl., ¶ 18) and that Defendant's patent application was subsequently granted and issued on April 19, 2005 as U.S. Patent No. 6,881,768 (Mot., Exh. J).  Plaintiff alleges that Defendant placed the term "patent pending" on its packaging to represent to the public that its product was distinct from Plaintiff's product, even though it was actually an infringing product.  Defendant argues that it only attached the "patent pending" label to its packaging once it applied for a patent.[7]  Additionally, Defendant argues that its advertising was designed to promote a product that did not infringe on the '074 patent, and was in fact, later patented itself.  Plaintiff has offered no evidence to the contrary.  Even taking all the facts in Plaintiff's Complaint and Response to Defendant's Motion for Summary Judgment as true, Plaintiff has done nothing more than establish that if Defendant did infringe the '074 Patent, then Defendant's product packaging and marketing materials may have been false or misleading.  As with Plaintiff's claim for common law unfair competition, the Court finds that Plaintiff has failed to establish a basis for its FDUTPA claim that can stand independent of its claim for patent infringement.  Since the Court has determined

---

[7] Defendant further notes that even if the basis for Plaintiff's FDUTPA claim is that Defendant used the patent pending label prior to submitting a patent application, Plaintiff should allege a violation of 35 U.S.C. § 292 which provides for the imposition of a fine against anyone using the terms "patent applied for" or "patent pending" when no application for a patent has been made.  Since § 292 allows for a private cause of action under federal law, this claim cannot be brought under FDUTPA.

that Defendant did not infringe on Plaintiff's patent, summary judgment shall be granted in favor of Plaintiff on Count III of the Complaint.

III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant Laticrete International Inc.'s Motion for Summary Judgment [DE 19] is **GRANTED**;

2.  Final judgment is granted in favor of Defendant Laticrete International Inc. and against Plaintiff Southern Grouts and Mortars, Inc., and Plaintiff shall take nothing from Defendant in this action;

3.  The Clerk of the Court shall **CLOSE THIS CASE** and **DENY** all pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of October, 2006.

JAMES I. COHN
United States District Judge

Copies to:

All counsel of record